UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
RORY MIGDOL,

                    Plaintiff,

      - against -

KILOLO KIJAKAZI, Acting Commissioner of
Social Security,

                    Defendant.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
23-CV-4410 (PKC)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Rory Migdol ("Plaintiff" or "Migdol") brings this action against the Commissioner of Social Security ("Commissioner") pursuant to 42 U.S.C. § 405(g). (*See* Compl., Dkt. 1.) Plaintiff seeks judicial review of the decision of the Social Security Administration ("SSA") denying his claim for Disability Insurance Benefits ("DIB"). (*Id.*) Before the Court are the parties' cross-motions for judgment on the pleadings. (*See* Mem. L. Supp. Pl.'s Mot. J. Pleadings, Dkt. 8 ("Pl.'s Mem."); Mem. L. Supp. Def.'s Mot. J. Pleadings, Dkt. 11 ("Def.'s Mem."); Pl.'s Reply Mem., Dkt. 13 ("Pl.'s Reply").) For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. This case is remanded for further proceedings consistent with this Memorandum & Order.

## BACKGROUND

**I.    Procedural History**

      Plaintiff filed an application for DIB on August 13, 2020, alleging a disability onset date of July 31, 2020, due to his history of heart attack and related ailments, as well as persistent neck

and knee pains. (Tr. 36, 96, 98.)[1] On March 22, 2021, Plaintiff's application was initially denied, (Tr. 81–95), and again denied upon reconsideration on November 18, 2021, (Tr. 97–115). Plaintiff thereafter filed a written request for a hearing before an Administrative Law Judge ("ALJ"), which was held before ALJ Dina Lowery on May 5, 2022 via telephone due to the then-ongoing COVID-19 pandemic. (Tr. 59, 177, 182–98.) On July 21, 2022, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act") from the alleged onset date through the date of decision. (Tr. 33–58.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision on May 25, 2023. (Tr. 1–6.) Plaintiff thereafter timely filed the instant action challenging the Commissioner's denial of Plaintiff's DIB application.[2] (Compl., Dkt. 1.)

## II.   ALJ's Decision

An ALJ applies a five-step inquiry to evaluate Social Security disability claims. *See Lesterhuis v. Colvin*, 805 F.3d 83, 86 n.2 (2d Cir. 2015); *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted) (explaining that the plaintiff bears the burden of proof at the first four steps of the inquiry; the Commissioner bears the burden at the final step). Here, at steps one

---

[1] Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript, (*see* Dkt. 6), appearing in the lower right corner of each page, and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

[2] Under 42 U.S.C. § 405(g):

[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). The Appeals Council denied Plaintiff's request for review on May 25, 2023, (Tr. 1), and Plaintiff filed his Complaint in this action 20 days later, on June 14, 2023, (Compl., Dkt. 1).

and two, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date and had the severe impairments of "status post myocardial infarction, secondary to vasospasm; and degenerative disc disease of the cervical spine." (Tr. 39–40.) At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of the impairments in the Listing of Impairments[3] contained in Appendix 1 to 20 C.F.R. Part 404, Subpart P, and that Plaintiff had the residual functional capacity ("RFC") to perform "light work" with several specified exertional limitations. (Tr. 40–41, 42 (citing 20 C.F.R. § 1567(b)).) At step four, the ALJ concluded that Plaintiff was capable of performing his past relevant work as "a Police Lieutenant or Captain, Precinct" on the basis that this "work does not require the performance of work-related activities precluded by [Plaintiff's RFC]." (Tr. 49 (citing 20 C.F.R. § 404.1565).) Nonetheless, the ALJ proceeded to step five and made the finding, based on the Vocational Expert's ("VE") testimony, that Plaintiff could perform jobs that exist in significant numbers in the national economy, including radio dispatcher and police aide. (Tr. 50–51.) The ALJ thus concluded that Plaintiff was not disabled within the meaning of the Act during the claimed period of disability. (Tr. 52.)

## STANDARD OF REVIEW

A district court reviewing a final decision of the Commissioner must determine whether the "correct legal standard[s]" were applied and whether there is "substantial evidence in the record" to support the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (quoting *Talavera*, 697 F.3d at 151). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record,

---

[3] Specifically, the ALJ considered Listings 1.15 (spinal disorder resulting in compromise of nerve root) and 4.04 (ischemic heart disease). (Tr. 41.)

including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417 (citation omitted).  However, "it is up to the agency, and not th[e] court, to weigh the conflicting evidence in the record."  *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).

**DISCUSSION**

**I.      The ALJ's RFC Determination Was Not Supported by Substantial Evidence**

In determining that Plaintiff retained the RFC to perform light work with exertional limitations, the ALJ specifically considered medical opinions from four sources: (1) internal medicine consultative examiner Dr. Silvia Aguiar, whose opinion the ALJ found "generally unpersuasive," (Tr. 46–47); (2) the administrative medical findings of the SSA's medical consultants, Drs. G. Feldman and U. Ng, both of which the ALJ found "persuasive," (Tr. 47); and (3) Plaintiff's treating physician, Dr. Marcel Odaimi, an oncologist and hematology specialist, whose medical opinion the ALJ found unpersuasive, (Tr. 48).  In sum, the ALJ relied primarily on the opinions of the non-examining agency physicians, Drs. Feldman and Ng, and very limitedly on the opinion of consultative examiner Dr. Aguiar, while finding wholly unpersuasive the opinion of Plaintiff's only treating source, Dr. Odaimi.  (Tr. 46–48.)

In general, an ALJ should not rely heavily on the findings of one-time examining consultants and non-examining physicians.  *See Ting v. Comm'r of Soc. Sec.*, No. 23-CV-1241 (PKC), 2024 WL 815841, at *8 (E.D.N.Y. Feb. 27, 2024) ("[T]he ALJ's reliance on the single examination done by [a consultative examiner] and the non-examining reports of [two doctors] do not constitute substantial evidence in this case[.]"); *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) ("We have frequently cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination." (citation omitted)); *Green-Younger v.*

4

*Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) ("Similarly, the reports of two SSA consulting physicians, who did not examine [plaintiff], are also not substantial evidence.")  Furthermore, the "Second Circuit has found remand appropriate when an ALJ relies on a non-examining medical expert to override the opinions of treating physicians and the non-examining medical expert does not consider the entirety of the Plaintiff's medical records." *Murphy v. Berryhill*, No. 17-CV-916 (JMA), 2019 WL 1075605, at *7 (E.D.N.Y. Mar. 7, 2019) (citing *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 200 (2d Cir. 2010) (summary order)).

Here, neither non-examining medical consultant had the opportunity to review the entire record; Dr. Feldman did not have access to any of Plaintiff's medical records after March 2021, (Tr. 81–95), nor Dr. Ng, after November 2021, (Tr. 97–115).  While the majority of the medical evidence was available by November 2021, the complete record runs through March 2022.  (*See* Tr. 1674–2037.)  These updated records include, *inter alia*, the results of an electrodiagnostic study showing evidence of chronic C-7 radicular changes with mild ulnar neuropathy, (Tr. 1680, 1684, 1906–09); treatment notes documenting ongoing neck pain, stiffness, and diminished range of motion, (Tr. 1680, 1913); and complete treatment records from Plaintiff's treating oncology and hematology specialist, Dr. Odaimi, (Tr. 1842–59, 1924–43).  Moreover, the ALJ declined to give any weight to Dr. Odaimi's medical opinion, even where the treating physician's findings and recommended limitations were consistent with the ALJ's RFC determination, such as never climbing ladders or crawling.  (*Compare* Tr. 42 *with* Tr. 47–48.)  The ALJ further failed to explain how evidence of Plaintiff's normal gait and balance undermines Dr. Odaimi's suggested limitations stemming from the fatigue and dizziness Plaintiff might experience as a result of his

cardiovascular and blood disorders.[4]  (*See* Tr. 48.)  For these reasons, the Court concludes that the ALJ's assessment of the medical opinions of record was not supported by substantial evidence or consistent with applicable law.  *See Dany Z. v. Saul*, 531 F. Supp. 3d 871, 885 (D. Vt. 2021) ("The new regulations cannot be read as a blank check giving ALJs permission to rely solely on agency consultants while dismissing treating physicians in a conclusory manner.").  Remand is therefore warranted.

## II.  The ALJ Erred at Step Five of the Inquiry

Plaintiff argues that, during the claimed period of disability, he was unable to perform the occupations identified by the ALJ in step five of her analysis because he lacked the skills to work as either a police radio dispatcher or police aide.  (Pl.'s Mem. at 22–24; Pl.'s Reply at 5–6.)  The Court agrees.[5]

As part of the step-five inquiry, the VE testified that the transferable skills Plaintiff acquired in his previous position included collecting/analyzing data, recording evidence, and report-writing, as well as interviewing, data entry, and overall knowledge of police terminology and procedures.  (Tr. 72–73.)  The VE further stated that these skills would transfer to the occupations of police radio dispatcher (DOT 379.362-010) and police aide (DOT 243.362-014), and transitioning to these occupations would require "very little, if any, vocational adjustment [by

---

[4] The ALJ also failed to accord any weight to this opinion despite acknowledging that Dr. Odaimi "possessed a relevant specialization in hematology and oncology." (Tr. 48.)  *See Nicole V. v. Comm'r of Soc. Sec.*, No. 20-CV-1099 (TPK), 2022 WL 1134485, at *4 (W.D.N.Y. Apr. 18, 2022) (noting that ALJ must "seriously consider" "the specialization of the source").

[5] Although the determination of Plaintiff's RFC on remand might obviate the need for a step five analysis, the Court discusses the error in the ALJ's step-five inquiry for consideration on remand, as necessary or appropriate.

6

Plaintiff] in terms of tools, work processes, work settings, or the industry."[6] (Tr. 51–52, 73); *see* 20 C.F.R. § 404.1568(d)(4) (opining generally with respect to applicants over the age of 55).[7]

The ALJ's determination of transferability of skills was not supported by substantial evidence because the VE failed to state with specificity, and the ALJ failed to inquire about, the skills that Plaintiff had acquired as a "Police Lieutenant or Captain, Precinct" of the New York City Police Department ("NYPD"). Rather than link any of the abilities ascribed to Plaintiff as a former NYPD officer to particular tasks that police radio dispatchers or aides must perform, the VE simply reiterated the DOT codes for the two occupations and described the jobs as sedentary and semi-skilled. (Tr. 73); *see also Higgs-Wilson v. Saul*, No. 17-CV-768 (LJV), 2019 WL 2537296, at *4 (W.D.N.Y. June 20, 2019) (explaining that an ALJ can make "sufficiently specific findings" about the transferability of skills to other jobs in the national economy by "link[ing] the skills found by the VE to a particular task that is specific to the performance of the other jobs that the VE recommends" (citations omitted)). Nowhere in the VE's testimony does she apply Plaintiff's purported skills as a former NYPD Lieutenant or Captain to specific tasks performed in the potential occupations identified by the VE. Nor did the ALJ attempt to expand on skills or link them to the requirements of the alternate occupations. *See Morales v. Comm'r of Soc. Sec.*, No. 21-CV-511 (PKC), 2022 WL 4586313, at *6 (E.D.N.Y. Sept. 29, 2022) (remanding because the ALJ's analysis did not link the plaintiff's skills to a particular task performed by the potential occupations).

---

[6] Notably, the VE also testified that these same transferable skills applied regardless of whether Plaintiff's past relevant work was classified as police lieutenant or captain–precinct (DOT 375.167-034), or police lieutenant–patrol (DOT 375.167-038). (Tr. 75–76, 94.)

[7] Plaintiff was born on August 19, 1966, making him 53 years old on the alleged disability onset date. He subsequently changed age category to "advanced age" upon turning 55. (Tr. 50); 20 C.F.R. § 404.1563(e).

7

Accordingly, the ALJ's determination at step five was not supported by substantial evidence.[8]

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is vacated and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Memorandum & Order. The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 9, 2024
Brooklyn, New York

---

[8] Separately, Plaintiff argues that this case should be remanded because the Appeals Council erroneously denied review of the ALJ's decision when it found that additional evidence submitted by Plaintiff did not have a reasonable probability of changing the outcome of that decision. (Pl.'s Mem. at 24–25; Tr. 1–3.) The Court need not consider the merits of Plaintiff's argument since it has found a basis for remand on other grounds.

8